UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

WELLS FARGO & CO.,

                Plaintiff,

                   v.

CITIGROUP, INC.,

                Defendant.

08 CIV. 8716 (LAK)

-------------------------------------------------------------x

## FIRST AMENDED COMPLAINT

        Plaintiff Wells Fargo & Company ("Wells Fargo"), by its undersigned counsel, states for its First Amended Complaint, with knowledge of its own acts and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

        1.    Wells Fargo seeks a declaratory judgment and injunctive relief under Section 126(c) of the Emergency Economic Stabilization Act of 2008 ("EESA"). Wells Fargo seeks a judgment declaring that: (a) a letter agreement between Wachovia Corporation ("Wachovia") and Citigroup, Inc. ("Citigroup") dated September 29, 2008, is unenforceable to the extent it purported to prohibit Wachovia from considering and entering into a merger agreement with Wells Fargo on or around October 3, 2008; and (b) an October 3, 2008 merger agreement between Wachovia and Wells Fargo is enforceable under Section 126(c) of the EESA.  Second, Wells Fargo seeks injunctive relief enjoining Citigroup from pursuing tortious interference claims against Wells Fargo that are based upon its merger proposal to, or agreement to merge with, Wachovia.

657489.3

## THE PARTIES

2.      Plaintiff Wells Fargo is a Delaware corporation with its principal place of business in San Francisco, California.

3.      Defendant Citigroup, Inc. is a Delaware corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the Emergency Economic Stabilization Act (the "EESA") signed into federal law on October 3, 2008.

5.      The acts and transactions constituting the violations alleged herein occurred in the Southern District of New York and elsewhere.  Citigroup transacts business within this District.  Accordingly, this Court has personal jurisdiction over Citigroup, and venue is proper under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

6.      During the early morning hours of Monday, September 29, 2008, Wachovia and Citigroup pursued a non-binding proposal denominated an "agreement in principle" that contemplated the acquisition by Citigroup of certain Wachovia operations for approximately $2.1 billion in consideration to Wachovia, or $1 per Wachovia share (the "Citigroup Transaction").

7.      Acting pursuant to its authority under Section 13 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1832, the FDIC invoked the "systemic risk" provision of the FDIA, and committed to use federal government funds to limit

Citigroup's losses on Wachovia's $312 billion loan portfolio to $42 billion if the Citigroup Transaction was consummated.

8.      Also on September 29, 2008, Citigroup entered into a Letter Agreement with Wachovia which purports, among other things, to prevent Wachovia from considering or entering into another agreement that would result in the acquisition of more than 15% of the equity or assets of Wachovia, even if such proposal is superior to the Citigroup Transaction, prior to October 6, 2008 (the "Letter Agreement").  The Letter Agreement is attached as Exhibit A and incorporated by reference herein.  By its terms, the Letter Agreement expired at 12:00 a.m. on Monday, October 6, 2008.

9.      Between September 29 and October 2, 2008, Wachovia worked on the potential agreement with Citigroup.  There were many substantial issues, and no definitive agreement was reached.

10.      On October 2, 2008, Wells Fargo unilaterally made a proposal to enter into a stock-for-stock merger with Wachovia (the "Wells Fargo Proposal").  The Wells Fargo Proposal contemplated an acquisition of all of Wachovia for consideration totaling $15 billion, or approximately $7 per Wachovia share.  During the night of October 2-3, the Wachovia board considered and approved the Wells Fargo Proposal.  In the early morning of October 3, Wachovia and Wells Fargo entered into a definitive merger agreement (the "Wells Fargo Transaction"), which was announced prior to the opening of the markets that day.

11.      Citigroup publicly announced that Wells Fargo interfered with its Letter Agreement with Wachovia, and asserted that the Wells Fargo Transaction was improper, unenforceable, and prohibited by the Letter Agreement.

12.     At or about 3:25 p.m. on October 4, 2008, Citigroup purported to commence an action against Wachovia, Wells Fargo, and the members of their boards of directors in the Supreme Court of the State of New York, County of New York.  A copy of Citigroup's complaint in that action is attached hereto as Exhibit B and incorporated herein.  The first two causes of action in Citigroup's complaint alleged that Wachovia had breached the Letter Agreement by entering into the Wells Fargo Transaction, and that Wells Fargo's entry into the Wells Fargo Transaction constituted tortious interference with the Letter Agreement.

13.     Citigroup's complaint also contained a "Third Cause of Action" against Wachovia and Wells Fargo entitled "Violation of EESA §126."  Specifically, Citigroup alleged that the Wells Fargo Transaction was "invalid and unenforceable under Section 126(c) of [EESA] because it would affect, restrict or limit Citigroup's ability to acquire Wachovia's insured bank subsidiaries in connection with the FDIC's exercise of its authority under Section 13 of the [Federal Deposit Insurance Act] to provide open bank assistance in support of Citigroup's proposed acquisition of Wachovia's insured depository institution subsidiaries."

14.     Citigroup alleged that it was "entitled to a judgment invalidating the proposed agreement between Wells Fargo and Wachovia as contrary to EESA §126(c)," as well as damages of "not less than $20 billion," punitive damages of "not less than $40 billion," injunctive relief prohibiting the consummation of the Wells Fargo Transaction, and specific performance of the Letter Agreement.

657489.3

15.     At or about 5:14 p.m. on October 4, 2008, counsel for Wachovia and Wells Fargo filed a notice of removal of Citigroup's complaint to the United States District Court for the Southern District of New York.

16.     The District Court (Koeltl, J.) held a telephone conference with counsel for Citigroup, Wachovia and Wells Fargo that started at or about 8 p.m. on October 4, 2008.  In that telephone conference, Citigroup informed the Court that it had voluntarily dismissed its complaint five minutes before the conference began.  Citigroup further informed the Court that it had commenced a second state court action by physically crossing out the Third Cause of Action under EESA that was contained in its first state court complaint.

17.     On October 9, 2008, after Citigroup ended the negotiations that Citigroup, Wachovia and Wells Fargo had pursued in an effort to reach a consensual resolution of their differences, Citigroup issued a press release announcing that it would not seek to enjoin the Wells Fargo Transaction, but would vigorously pursue what it characterized as "strong" legal claims seeking damages of $60 billion from Wachovia for breaching the Letter Agreement, and from Wells Fargo for tortiously interfering with the Letter Agreement.

18.     According to a press report also dated October 9, 2008, "[s]ources inside Citigroup told CNBC that that bank believes Wells Fargo will have to settle claims of tortious interference of contract that Citigroup has made against it before any merger between Wells Fargo and Wachovia can take place."

19.     Wells Fargo applied to the Board of Governors of the Federal Reserve System (the "Fed Board") for approval of its acquisition of and merger with

Wachovia.  Citigroup submitted comments to the Fed Board objecting to Wachovia's

application.  According to a Statement by the Fed Board, Citigroup objected on the

grounds, among other things, that Wells Fargo's agreement to acquire Wachovia violated

the Letter Agreement and "improperly interfered with plans by the FDIC to provide

assistance pursuant to section 13(c) of the FDI Act for Citigroup's proposed acquisition

of some or all of Wachovia."

      20.     In connection with Citigroup's prosecution of claims against Wells

Fargo, as it did in its first state court complaint, Citigroup could assert a claim seeking to

"invalidat[e] the proposed agreement between Wells Fargo and Wachovia as contrary to

EESA §126(c)."  While Citigroup crossed that cause of action out of its first state court

complaint, Citigroup could re-assert that federal claim if  and when it believes it would be

advantageous to do so.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

      21.     Wells Fargo incorporates herein by reference and realleges the

allegations of each of the preceding paragraphs.

      22.     Section 126(c) of the EESA amends section 13(c) of the Federal

Deposit Insurance Act by adding at the end the following new paragraph:

> UNENFORCEABILITY OF CERTAIN AGREEMENTS -
> No provision contained in any existing or future standstill,
> confidentiality, or other agreement that, directly or
> indirectly
>
> (1)    affects, restricts, or limits the ability of any person to offer or
> acquire,
>
> (2)    prohibits any person from offering to acquire or acquiring, or

(3)     prohibits any person from using any previously disclosed information in connection with any such offer to acquire or acquisition of,

all or part of any insured depository institution, including any liabilities, assets, or interest therein, in connection with any transaction in which the [FDIC] exercises its authority under section 11 or 13, shall be enforceable against or impose any liability on such person, as such enforcement or liability shall be contrary to public policy.

23.     One of the purposes of the EESA is to protect the interests of the "taxpayers of the United States" as well as shareholders and creditors of the affected companies.

24.     As alleged above, Citigroup contends that Wells Fargo tortiously interfered with the Letter Agreement because that Agreement restricts Wachovia Board of Directors from considering, negotiating, or accepting proposals for merger or acquisition -- such as the Wells Fargo Proposal and Wells Fargo Transaction -- even if such proposals or agreements are more advantageous to Wachovia's shareholders, and the taxpayers of the United States, than the Citigroup Transaction.

25.     The Letter Agreement existed at the time of enactment of the EESA and purported to prevent or limit other offers to acquire Wachovia (including the Wells Fargo Proposal), even where such offers are more beneficial to Wachovia and to taxpayers.  As such, the Letter Agreement is "contrary to public policy" and not enforceable under the EESA.

26.     As alleged above, Citigroup contends that the Wells Fargo Transaction was invalid and unenforceable under section 126(c) of EESA because it affected, restricted or limited Citigroup's ability to acquire certain of Wachovia's insured bank subsidiaries with FDIC support and/or assistance.

27.    In fact, the Wells Fargo Transaction did not affect, restrict or limit Citigroup's ability to offer or acquire Wachovia's insured bank subsidiaries.

28.    Because the Letter Agreement is not enforceable under the EESA, and because the Wells Fargo Proposal and Wells Fargo Transaction did not affect, restrict or limit Citigroup's ability to offer or acquire Wachovia's insured bank subsidiaries, Wells Fargo cannot be liable for tortious interference with the Letter Agreement and the Wells Fargo Transaction does not violate section 126(c) of the EESA.

### SECOND CLAIM FOR RELIEF

#### (Injunction Against Citigroup)

29.    Wells Fargo incorporates herein by reference and realleges the allegations of each of the preceding paragraphs.

30.    As alleged above, the Letter Agreement is "contrary to public policy" and unenforceable under the EESA, and the Wells Fargo Transaction did not affect, restrict or limit Citigroup's ability to offer or acquire Wachovia's insured bank subsidiaries.  As a result, Wells Fargo cannot be liable for tortious interference with the Letter Agreement.

31.    It appears that a purpose of Citigroup's pursuit of tortious interference claims against Wells Fargo is to cause investors to believe, incorrectly, that Citigroup's claims for damages will affect the closing of the Wells Fargo Transaction. Wells Fargo has no adequate remedy at law to address such conduct by Citigroup.

WHEREFORE, Wells Fargo requests that this Court enter judgment:

(a)    Declaring that the Letter Agreement is void under section 126(c) of the EESA to the extent it would have precluded Wachovia from considering the Wells Fargo Proposal or entering into the Wells Fargo Transaction;

    (b)        Declaring that the Wells Fargo Transaction did not violate section 126(c) of the EESA;

    (c)        Declaring that Wells Fargo cannot be liable for tortious interference with the Letter Agreement based upon the Wells Fargo Proposal or Wells Fargo Transaction;

    (d)        Enjoining Citigroup from pursuing claims for tortious interference against Wells Fargo to the extent such claims are premised upon the Wells Fargo Proposal or Wells Fargo Transaction; and

    (e)        Awarding Wells Fargo such other damages, attorneys' fees, costs and other relief as may be just and proper.

Dated:  October 30, 2008

FRIEDMAN KAPLAN SEILER & ADELMAN LLP

_____

Eric Seiler (eseiler@fklaw.com)
Bruce S. Kaplan (bkaplan@fklaw.com)
Andrew W. Goldwater (agoldwater@fklaw.com)
Andrew W. Schilling (aschilling@fklaw.com)
1633 Broadway
New York, New York 10019
(212) 833-1100

*Attorneys for Wells Fargo & Company*

# EXHIBIT A

Citigroup Inc.

September 29, 2008

Wachovia Corporation

Ladies and Gentlemen:

Citigroup Inc. ("Citigroup") and Wachovia Corporation ("Wachovia") are party to that non-binding term sheet dated September 29, 2008 (the "Term Sheet") setting forth the terms and conditions of a proposed transaction between them (the "Transaction"). Citigroup and Wachovia will continue to proceed to negotiate definitive agreements (the "Definitive Documentation") relating to the Transaction in form and substance satisfactory to each of them with a view to executing such Definitive Documentation prior to October 6, 2008 (the "Exclusivity Termination Date").

In consideration of the foregoing and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, Wachovia hereby agrees that, during the period commencing on the date hereof and ending on Exclusivity Termination Date, Wachovia shall not, and shall not permit any of its subsidiaries or any of its or their respective officers, directors, employees, investment bankers, attorneys, accountants, consultants or other agents or advisors ("Representatives") to, directly or indirectly, (i) solicit, initiate or take any action to facilitate or encourage the submission of any Acquisition Proposal, (ii) enter into or participate in any discussions or negotiations with, furnish any information relating to Wachovia or any of its subsidiaries, assets or businesses or afford access to the business, properties, assets, books or records of Wachovia or any of its subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, an Acquisition Proposal, (iii) grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of Wachovia or (iv) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal. As of the date hereof, Wachovia will, and will cause its Representatives to, terminate any discussions or negotiations with respect to any Acquisition Proposal.

"Acquisition Proposal" means, other than the Transaction, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 15% or more of the consolidated assets of Wachovia, or over 15% of any class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party's beneficially owning 15% or more of any

class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving Wachovia or any of its subsidiaries whose assets, individually or in the aggregate, constitute more than 15% of the consolidated assets of Wachovia or (iv) any other transaction the consummation of which could reasonably be expected to impede, interfere with, prevent or materially delay the Transaction or that could reasonably be expected to dilute materially the benefits to Citigroup of the Transaction.

The parties agree that in the event of any breach of this letter agreement, the parties would be irreparably harmed and could not be made whole by monetary damages. Each party accordingly agrees (i) not to assert by way of defense or otherwise that a remedy at law would be adequate and (ii) that the remedy of specific performance of this letter agreement is appropriate in any action in court, in addition to any other remedy to which such party may be entitled.

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York. The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any state or federal court sitting in New York City, Borough of Manhattan, over any suit, action or proceeding arising out of or relating to this letter agreement. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties hereby agree that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon you and may be enforced in any other courts to whose jurisdiction the parties are or may be subject by suit upon such judgment.

This letter agreement may be executed in counterparts, either one of which need not contain the signature of more than one party, but both such counterparts taken together will constitute one and the same agreement.

If the foregoing accurately summarizes our understanding, we request that you approve this letter agreement and evidence such approval by causing a copy of this letter agreement to be executed and returned to the undersigned.

Very truly yours,

CITIGROUP INC.

By: _____
Name: GARY L. CRITTENDEN
Title: CFO

Agreed and accepted:

WACHOVIA CORPORATION

By: _____
Name:
Title:

Citigroup Inc.

September 29, 2008

Wachovia Corporation

Ladies and Gentlemen:

Citigroup Inc. ("Citigroup") and Wachovia Corporation ("Wachovia") are party to that non-binding term sheet dated September 29, 2008 (the "Term Sheet") setting forth the terms and conditions of a proposed transaction between them (the "Transaction"). Citigroup and Wachovia will continue to proceed to negotiate definitive agreements (the "Definitive Documentation") relating to the Transaction in form and substance satisfactory to each of them with a view to executing such Definitive Documentation prior to ~~[DATE]~~ (the "Exclusivity Termination Date").

*[handwritten margin note: JGS October 6, 2008]*

In consideration of the foregoing and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, Wachovia hereby agrees that, during the period commencing on the date hereof and ending on Exclusivity Termination Date, Wachovia shall not, and shall not permit any of its subsidiaries or any of its or their respective officers, directors, employees, investment bankers, attorneys, accountants, consultants or other agents or advisors ("Representatives") to, directly or indirectly, (i) solicit, initiate or take any action to facilitate or encourage the submission of any Acquisition Proposal, (ii) enter into or participate in any discussions or negotiations with, furnish any information relating to Wachovia or any of its subsidiaries, assets or businesses or afford access to the business, properties, assets, books or records of Wachovia or any of its subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, an Acquisition Proposal, (iii) grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of Wachovia or (iv) enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal. As of the date hereof, Wachovia will, and will cause its Representatives to, terminate any discussions or negotiations with respect to any Acquisition Proposal.

"Acquisition Proposal" means, other than the Transaction, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 15% or more of the consolidated assets of Wachovia, or over 15% of any class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party's beneficially owning 15% or more of any

class of equity or voting securities of Wachovia or any of its subsidiaries whose assets, taken as a whole, constitute more than 15% of the consolidated assets of Wachovia, (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving Wachovia or any of its subsidiaries whose assets, individually or in the aggregate, constitute more than 15% of the consolidated assets of Wachovia or (iv) any other transaction the consummation of which could reasonably be expected to impede, interfere with, prevent or materially delay the Transaction or that could reasonably be expected to dilute materially the benefits to Citigroup of the Transaction.

The parties agree that in the event of any breach of this letter agreement, the parties would be irreparably harmed and could not be made whole by monetary damages. Each party accordingly agrees (i) not to assert by way of defense or otherwise that a remedy at law would be adequate and (ii) that the remedy of specific performance of this letter agreement is appropriate in any action in court, in addition to any other remedy to which such party may be entitled.

This agreement shall be governed by, and construed in accordance with, the laws of the State of New York.  The parties hereby irrevocably and unconditionally submit to the exclusive jurisdiction of any state or federal court sitting in New York City, Borough of Manhattan, over any suit, action or proceeding arising out of or relating to this letter agreement.  The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  The parties hereby agree that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon you and may be enforced in any other courts to whose jurisdiction the parties are or may be subject by suit upon such judgment.

This letter agreement may be executed in counterparts, either one of which need not contain the signature of more than one party, but both such counterparts taken together will constitute one and the same agreement.

If the foregoing accurately summarizes our understanding, we request that you approve this letter agreement and evidence such approval by causing a copy of this letter agreement to be executed and returned to the undersigned.

Very truly yours,

CITIGROUP INC.

By: _____
Name:
Title:

Agreed and accepted:

WACHOVIA CORPORATION

By: _____
Name:
Title:

**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

| | |
|---|---|
| CITIGROUP INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>WACHOVIA CORPORATION, WELLS FARGO & CO., JOHN D. BAKER, II, PETER C. BROWNING, JOHN T. CASTEEN, III, JERRY GITT, WILLIAM H. GOODWIN, JR., MARYELLEN C. HERRINGER, ROBERT A. INGRAM, DONALD M. JAMES, MACKEY J. MCDONALD, JOSEPH NEUBAUER, TIMOTHY D. PROCTOR, ERNEST S. RADY, VAN L. RICHEY, RUTH G. SHAW, LANTY L. SMITH, DONA DAVIS YOUNG, JOHN S. CHEN, LLOYD H. DEAN, SUSAN E. ENGEL, ENRIQUE HERNANDEZ, JR., RICHARD M. KOVACEVICH, RICHARD D. MCCORMICK, CYNTHIA H. MILLIGAN, NICHOLAS G. MOORE, PHILIP J. QUIGLEY, DONALD B. RICE, JUDITH M. RUNSTAD, STEPHEN W. SANGER, ROBERT K. STEEL, JOHN G. STUMPF, SUSAN G. SWENSON, MICHAEL W. WRIGHT, and JOHN DOES 1-99<br><br>        Defendants. | **VERIFIED COMPLAINT**<br><br>Index No. |

Plaintiff Citigroup Inc. ("Citigroup"), by its attorneys Gregory P. Joseph Law Offices LLC, Michael S. Helfer and P.J. Mode, Jr., for its Complaint against defendants Wachovia Corporation ("Wachovia"), Wells Fargo & Co. ("Wells Fargo"), John D. Baker, II ("Baker"), Peter C. Browning ("Browning"), John L. Casteen, III ("Casteen"), Jerry Gitt ("Gitt"), William H. Goodwin, Jr. ("Goodwin"), Maryellen C. Herringer ("Herringer"), Robert A. Ingram ("Ingram"), Donald M. James ("James"),

Mackey J. McDonald ("McDonald"), Joseph Neubauer ("Neubauer"), Timothy D.
Proctor ("Proctor"), Ernest S. Rady ("Rady"), Van L. Richey ("Richey"), Ruth G. Shaw
("Shaw"), Lanty L. Smith ("Smith"), Dona Davis Young ("Young"), John S. Chen
("Chen"), Lloyd H. Dean ("Dean"), Susan E. Engel ("Engel"), Enrique Hernandez, Jr.
("Hernandez"), Richard M. Kovacevich ("Kovacevich"), Richard D. McCormick
("McCormick"), Cynthia H. Milligan ("Milligan"), Nicholas G. Moore ("Moore"), Philip
J. Quigley ("Quigley"), Donald B. Rice ("Rice"), Judith M. Runstad ("Runstad"),
Stephen W. Sanger ("Sanger"), Robert K. Steel ("Steel"), John G. Stumpf ("Stumpf"),
Susan G. Swenson ("Swenson"), Michael W. Wright ("Wright"), and John Does 1-99
(the "Doe Defendants") alleges on personal knowledge as to the plaintiff's own conduct
and on information and belief as to the defendants' conduct, as follows:

### Nature of the Action

1.      This is an action for bad faith breach of contract, tortious
interference with contract, and a violation of Section 126(c) of the Emergency Economic
Stabilization Act of 2008.

2.      In late September 2008, Wachovia Corporation ("Wachovia") was
on the verge of collapse, burdened by bad loans and caught up in a liquidity crisis that
threatened its very survival.

3.      Well Fargo once had been a potential suitor for Wachovia in
connection with a process for the rescue of Wachovia orchestrated by the Federal Deposit
Insurance Corporation ("FDIC"), the Office of the Comptroller of the Currency ("OCC"),
the Board of Governors of the Federal Reserve System (the "Federal Reserve"), and the

Federal Reserve Bank of New York ("FRBNY"). By Sunday, September 28, 2008,
Wells Fargo had determined not to participate in the process of rescuing Wachovia.

      4.     By approximately 4 a.m. on Monday, September 29, 2008, after
intensive negotiations, and in order to avoid the imminent possibility that all of
Wachovia's insured depository institution subsidiaries would be closed and put into
FDIC receivership, Citigroup and Wachovia reached an agreement-in-principle. Pursuant
to that agreement, Citigroup would acquire Wachovia's commercial banking subsidiaries
and other businesses for approximately $2.1 billion plus the assumption of approximately
$54 billion of secured and unsecured Wachovia debt at the holding company level, and
the insured and uninsured deposits and other obligations to Wachovia's creditors.

      5.     In order to induce Citigroup and Wachovia to enter into the
agreement-in-principle and to avoid the imminent possibility that all of Wachovia's
insured depository institution subsidiaries would be closed and put into FDIC
receivership, the FDIC agreed to provide open bank assistance to support the transaction,
pursuant to Section 13 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1823,
after the FDIC, the Federal Reserve and the Secretary of the Treasury, in consultation
with the President of the United States, invoked the "systemic risk" provision of the
FDIA.

      6.     Had Citigroup not stepped up in this way, Wachovia would have
failed the following day and the debt issued by its holding company would have
collapsed, with potentially devastating implications for the stability and security of the
financial markets.

7.      At approximately 7:30 a.m., on September 29, 2008, before the parties themselves had issued press releases, the FDIC announced its support for the transaction and sought to reassure Wachovia customers that their deposits were fully protected.

8.      On September 29, 2008, Citigroup and Wachovia also entered into a binding agreement (the "Exclusivity Agreement"), pursuant to which Wachovia agreed not to negotiate or enter into any competing acquisition agreement during the exclusivity period, which extended until October 6, 2008. *See* Exhibit A. The Exclusivity Agreement expressly contemplated that Citigroup and Wachovia would negotiate definitive deal documents during this period.

9.      In particular, pursuant to the Exclusivity Agreement, Wachovia is contractually forbidden, among other things, (i) to "enter into or participate in any discussions or negotiations with, furnish any information relating to Wachovia . . . [or] otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by, any third party that is seeking to make, or has made, an Acquisition Proposal"; or (ii) to "enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to an Acquisition Proposal."

10.      The Exclusivity Agreement defines "Acquisition Proposal" broadly to include "any acquisition or purchase, direct or indirect" of 15% or more of the consolidated assets or of any class of equity or voting securities of Wachovia; any merger, consolidation, business combination or similar transaction involving Wachovia; or any other transaction "the consummation of which could reasonably be expected to

4

impede, interfere with, prevent or materially delay the [Citigroup/Wachovia] Transaction or that could reasonably be expected to dilute materially the benefits to Citigroup of the Transaction."

   11. The Exclusivity Agreement further provides that the parties would be irreparably harmed by any breach of the Exclusivity Agreement, and that each party agrees "that the remedy of specific performance of [the Exclusivity Agreement] is appropriate in any action in court, in addition to any other remedy to which such party may be entitled."

   12. Early in the morning on Thursday, October 2, 2008, the principals of Citigroup and Wachovia met and reached high-level agreement on all remaining issues.  At that meeting, Citigroup and Wachovia further agreed that these points would be quickly documented and that final documents would be executed before the close of business on the following day.

   13. Following this meeting, teams of lawyers worked through the day and night on Thursday to finalize the definitive deal documents.  Their work had nearly been completed by early Friday morning.

   14. According to press reports, and unknown to Citigroup, at approximately 7:30 p.m. on Thursday, October 2, 2008, unnamed "federal regulators" advised Wachovia to expect an acquisition proposal from Wells Fargo.

   15. Wachovia did not disclose to Citigroup that it expected to receive a competing offer from Wells Fargo, but instead Wachovia and its lawyers continued to participate in discussions with Citigroup to document their agreement until approximately 2 a.m. on Friday, October 3, 2008.

16.     At approximately 2:15 a.m. on Friday, October 3, 2008, Wachovia's Chief Executive Officer, Robert Steel, advised Citigroup that Wachovia had entered into an acquisition agreement with Wells Fargo, at which point Wachovia refused to participate in further discussions with Citigroup.

17.     At approximately 7:15 a.m. on October 3, 2008, Wachovia issued a press release announcing that Wachovia and Wells Fargo had "signed a definitive agreement for the merger of the two companies." This agreement and the negotiations that preceded it flagrantly violate the express language of the Exclusivity Agreement. *See* Exhibit B.

18.     Among the differences, the illegitimate Wells Fargo deal—unlike the Citigroup agreement to acquire Wachovia's commercial banking subsidiaries and other businesses—triggered the golden parachutes of Wachovia CEO Robert Steel and its other senior executives, which would enable these executives to bestow upon themselves a $225 million windfall.

19.     During this period, numerous officers and directors of Wachovia and Wells Fargo, and numerous of their legal and other advisors, known and unknown, acted knowingly and deceptively in furtherance of a plan to violate and interfere with Citigroup's rights under the binding Exclusivity Agreement.

## The Parties

20.     Plaintiff Citigroup is a corporation organized under the laws of Delaware with its principal place of business at 399 Park Avenue, New York, New York.

21.     On information and belief, Defendant Wachovia is a corporation

organized under the laws of North Carolina with its principal place of business at One Wachovia Center, Charlotte, North Carolina.

22.     On information and belief, Defendant Wells Fargo is a corporation organized under the laws of Delaware with its principal place of business in at 420 Montgomery Street, San Francisco, California.

23.     On information and belief, Defendant Baker is a member of the Board of Directors of Wachovia and resides in Jacksonville, Florida.

24.     On information and belief, Defendant Browning is a member of the Board of Directors of Wachovia and resides in Charlotte, North Carolina.

25.     On information and belief, Defendant Casteen is a member of the Board of Directors of Wachovia and resides in Charlottesville, Virginia.

26.     On information and belief, Defendant Jerry Gitt is a member of the Board of Directors of Wachovia and resides in Palm Desert, California.

27.     On information and belief, Defendant Goodwin is a member of the Board of Directors of Wachovia and resides in Richmond, Virginia.

28.     On information and belief, Defendant Herringer is a member of the Board of Directors of Wachovia and resides in Piedmont, California.

29.     On information and belief, Defendant Ingram is a member of the Board of Directors of Wachovia and resides in Durham, North Carolina.

30.     On information and belief, Defendant James is a member of the Board of Directors of Wachovia and resides in Birmingham, Alabama.

31.     On information and belief, Defendant McDonald is a member of the Board of Directors of Wachovia and resides in Greensboro, North Carolina.

32.     On information and belief, Defendant Neubauer is a member of the Board of Directors of Wachovia and resides in Philadelphia, Pennsylvania.

33.     On information and belief, Defendant Proctor is a member of the Board of Directors of Wachovia and resides in New York, New York.

34.     On information and belief, Defendant Rady is a member of the Board of Directors of Wachovia and resides in La Jolla, California.

35.     On information and belief, Defendant Richey is a member of the Board of Directors of Wachovia and resides in Birmingham, Alabama.

36.     On information and belief, Defendant Shaw is a member of the Board of Directors of Wachovia and resides in Davidson, North Carolina.

37.     On information and belief, Defendant Smith is the Chairman of the Board of Directors of Wachovia and resides in Raleigh, North Carolina.

38.     On information and belief, Defendant Steel is the Chief Executive Officer and a member of the Board of Directors of Wachovia and resides in Greenwich, Connecticut.

39.     On information and belief, Defendant Young is a member of the Board of Directors of Wachovia and resides in Hartford, Connecticut.

40.     Defendants Baker, Browning, Casteen, Gitt, Goodwin, Herringer, Ingram, James, McDonald, Neubauer, Proctor, Rady, Richey, Shaw, Smith, Steel, and Young are collectively referred to as the "Wachovia Director Defendants."

41.     On information and belief, Defendant Chen is a member of the Board of Directors of Wells Fargo and resides in Danville, California.

8

42.     On information and belief, Defendant Dean is a member of the Board of Directors of Wells Fargo and resides in Half Moon Bay, California.

43.     On information and belief, Defendant Engel is a member of the Board of Directors of Wells Fargo and resides in Minneapolis, Minnesota.

44.     On information and belief, Defendant Hernandez is a member of the Board of Directors of Wells Fargo and resides in Pasadena, California.

45.     On information and belief, Defendant Kovacevich is the Chairman of the Board of Directors of Wells Fargo and resides in San Francisco, California.

46.     On information and belief, Defendant McCormick is a member of the Board of Directors of Wells Fargo and resides in Denver, Colorado.

47.     On information and belief, Defendant Milligan is a member of the Board of Directors of Wells Fargo and resides in Lincoln, Nebraska.

48.     On information and belief, Defendant Moore is a member of the Board of Directors of Wells Fargo and resides in Los Altos Hills, California.

49.     On information and belief, Defendant Quigley is a member of the Board of Directors of Wells Fargo and resides in Burlingame, California.

50.     On information and belief, Defendant Rice is a member of the Board of Directors of Wells Fargo and resides in Los Angeles, California.

51.     On information and belief, Defendant Runstad is a member of the Board of Directors of Wells Fargo and resides in Seattle, Washington.

52.     On information and belief, Defendant Sanger is a member of the Board of Directors of Wells Fargo and resides in Wayzata, Minnesota.

9

53.     On information and belief, Defendant Stumpf is President and Chief Executive Officer of Wells Fargo as well as a member of the Board of Directors of Wells Fargo and resides in San Francisco, California.

54.     On information and belief, Defendant Swenson is a member of the Board of Directors of Wells Fargo and resides in Irvine, California.

55.     On information and belief, Defendant Wright is a member of the Board of Directors of Wells Fargo and resides in Wayzata, Minnesota.

56.     Defendants Chen, Dean, Engel, Hernandez, Kovacevich, McCormick, Milligan, Moore, Quigley, Rice, Runstad, Sanger, Stumpf, Swenson, and Wright are collectively referred to as the "Wells Fargo Director Defendants."

57.     On information and belief, the Doe Defendants are individuals and legal entities that participated in the flagrant violation of the Exclusivity Agreement, committed tortious interference with contract, and violated Section 126(c) of the Emergency Economic Stabilization Act of 2008.

### Jurisdiction

58.     Pursuant to the Exclusivity Agreement, Defendant Wachovia has "irrevocably and unconditionally submit[ted] to the exclusive jurisdiction of any state or federal court sitting in New York City, Borough of Manhattan, over any suit, action or proceeding arising out of or relating to this letter agreement."  Moreover, long-arm jurisdiction is appropriate over Defendant Wachovia under § 302 of the New York Civil Practice Law and Rules ("CPLR"), as this entity (i) transacts business in this State, and/or (ii) committed tortious acts within the State, and/or (iii) committed tortious acts outside of this State causing injury to plaintiff in this State, and (a) regularly does or solicits

10

business or derives substantial revenue from services rendered within this State, or (b) expects or should reasonably expect the act to have consequences in the State and derives substantial revenue from interstate or international commerce.

59.     Long-arm jurisdiction is appropriate over Defendant Wells Fargo under § 302 of the CPLR, as this entity (i) transacts business in this State, and/or (ii) committed tortious acts within the State, and/or (iii) committed tortious acts outside of this State causing injury to plaintiff in this State, and (a) regularly does or solicits business or derives substantial revenue from services rendered within this State, or (b) expects or should reasonably expect the act to have consequences in the State and derives substantial revenue from interstate or international commerce.

60.     Jurisdiction is appropriate as to each of the individual defendants as they either reside in this State or are subject to long-arm jurisdiction under § 302 of the CPLR.

### Venue

61.     Pursuant to CPLR § 503(a) and (c), venue is proper in New York County because plaintiff Citigroup's principal office is located in this County.

62.     In addition, pursuant to the Exclusivity Agreement, Defendant Wachovia "irrevocably and unconditionally waive[d] any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum."

11

**FIRST CAUSE OF ACTION**
**(Against Defendant Wachovia)**
**Breach of Contract**

63.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 62 above, as if fully set forth here.

64.     On September 29, 2008, Defendant Wachovia entered into a binding contract with Citigroup, pursuant to which it unconditionally agreed not to negotiate or enter into any competing acquisition agreement with any other entity during the exclusivity period, which extended until October 6, 2008.

65.     By negotiating with and entering into an acquisition agreement with Defendant Wells Fargo, Wachovia breached the terms of its Exclusivity Agreement with Citigroup.

66.     Wachovia's breach of its contractual obligations has caused substantial damages to Citigroup, and threatens to cause enormous additional damages in the future.  The amount of such damages shall be determined at trial.

67.     As Wachovia acknowledged in the Exclusivity Agreement, "in the event of any breach of this letter agreement, the parties would be irreparably harmed and could not be made whole by monetary damages.  Each party accordingly agrees (i) not to assert by way of defense or otherwise that a remedy at law would be adequate and (ii) that the remedy of specific performance of this letter agreement is appropriate in any action in court, in addition to any other remedy to which such party may be entitled."

68.     Citigroup is confident that the few remaining open issues between the parties can be resolved promptly in good faith negotiations and is prepared to go well

12

beyond the halfway mark if necessary to consummate the transaction agreed to by the parties.

69.      Absent immediate relief by the Court, Citigroup will be deprived of its bargained for opportunity to negotiate pursuant to the Exclusivity Agreement and will be irreparably harmed when deprived of the opportunity to acquire the Wachovia assets as provided for by the Exclusivity Agreement.

70.      Citigroup is entitled to (i) specific performance of the terms of the Exclusivity Agreement, including an injunction requiring Wachovia to negotiate with Citigroup in good faith to resolve the few remaining open issues, (ii) an injunction preventing Wachovia from entering into or consummating any acquisition transaction with Wells Fargo, (iii) an injunction preventing Wachovia from further violating its obligations under the Exclusivity Agreement, and (iv) an injunction preventing Wachovia from engaging in further negotiations with Wells Fargo.

**SECOND CAUSE OF ACTION**
**(Against Defendant Wells Fargo, the Wachovia Director Defendants, the Wells Fargo Director Defendants, and the John Doe Defendants)**
**Tortious Interference with Contract**

71.      Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 70 above, as if fully set forth here.

72.      The Exclusivity Agreement is a valid and binding contract between Citigroup and Wachovia.

73.      On information and belief, defendant Wells Fargo, the Wachovia Director Defendants, the Wells Fargo Director Defendants and the Doe Defendants were fully aware at all times of the existence and terms of the Exclusivity Agreement, and

13

were further fully aware that the Exclusivity Agreement precluded Wachovia from negotiating or entering into an acquisition agreement with any other party during the exclusivity period, which extends until October 6, 2008. Wells Fargo, the Wachovia Director Defendants, the Wells Fargo Director Defendants and the Doe Defendants were thus aware that the October 3, 2008 agreement, the negotiations that preceded it, and any steps taken to consummate it were violating Wachovia's contractual duties to Citigroup.

74.     Defendant Wells Fargo, the Wachovia Director Defendants, the Wells Fargo Director Defendants, and the Doe Defendants intentionally and without justification procured Wachovia's breach of the Exclusivity Agreement.

75.     Wachovia breached the Exclusivity Agreement by, among other things, negotiating and entering into its October 3, 2008 purported agreement with Wells Fargo and taking steps to consummate that agreement.

76.     Citigroup has been damaged by Wachovia's breach of the Exclusivity Agreement in an amount to be determined at trial, but not less than $20 billion.

77.     Accordingly, the participation of Well Fargo, the Wachovia Director Defendants, the Wells Fargo Director Defendants, and the Doe Defendants in the wrongful scheme to violate Citigroup's rights constitutes tortious interference with Citigroup's Exclusivity Agreement with Wachovia.

### THIRD CAUSE OF ACTION
(Against Defendants Wachovia and Wells Fargo)
<u>Violation of EESA § 126</u>

78.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 77 above, as if fully set forth here.

14

79.   The October 3, 2008 agreement between Wells Fargo and Wachovia is invalid and unenforceable under Section 126(c) of the Emergency Economic Stabilization Act of 2008 ("EESA") because it would affect, restrict or limit Citigroup's ability to acquire Wachovia's insured bank subsidiaries in connection with the FDIC's exercise of its authority under Section 13 of the FDIA to provide open bank assistance in support of Citigroup's proposed acquisition of Wachovia's insured depository institution subsidiaries.

80.   Citigroup is therefore entitled to a judgment invalidating the proposed agreement between Wells Fargo and Wachovia as contrary to EESA § 126(c).

WHEREFORE, plaintiff Citigroup respectfully requests judgment against the Defendants, as follows:

(a)   Preliminary and permanent injunctive relief enjoining Defendants, their subsidiaries and affiliates, agents, and any other persons working on their behalf or in concert with them, from (i) negotiating, entering into, or consummating any transaction involving any acquisition of or merger with Wachovia; (ii) engaging in any other conduct in furtherance of any such transaction; or (iii) any other conduct prohibited by the Exclusivity Agreement;

(b)   Specific performance of the terms of the Exclusivity Agreement requiring Wachovia to negotiate in good faith with Citigroup as follows:  (i) Wachovia and Citigroup shall reconvene in New York beginning no later than 12 p.m. on Sunday, October 5, 2008; and (ii) Wachovia and Citigroup shall continue such negotiations until at least 12 p.m. on Wednesday, October 8, 2008 (unless a definitive and binding agreement between Citigroup and Wachovia is executed prior to that time);

(e)  Punitive damages in an amount not less than $40 billion;

(f)  The costs of this action, including reasonable attorneys' fees; and

(g)  Any other relief as the Court may consider just.

Dated: New York, New York
       October 4, 2008

GREGORY P. JOSEPH LAW OFFICES LLC

By: _s/ Gregory P. Joseph_
        Gregory P. Joseph
485 Lexington Avenue, 30th Floor
New York, New York 10017
(212) 407-1210


By: _____
        Michael S. Helfer
        P.J. Mode, Jr.
Citigroup Inc.
399 Park Avenue
New York, New York 10043
(212) 559-5152

Attorneys for Plaintiff Citigroup Inc.

16

**VERIFICATION**

State of New York        )
                         : ss.:
County of New York  )


      MICHAEL S. HELFER, being duly sworn, deposes and says:

      I am General Counsel of plaintiff CITIGROUP INC., a corporation incorporated under the laws of the Delaware.  I have read the foregoing complaint and know its contents.  The complaint is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe it to be true.

                                   /s/
                                   Michael S. Helfer

Sworn to before me
this 4th day of October, 2008

       /s/
      Notary Public

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of plaintiff's Amended Complaint, dated October 30, 2008, were served by Federal Express mail and by electronic transmission on October 30, 2008, upon the following:

Gregory P Joseph
Gregory P. Joseph Law Offices LLC
485 Lexington Avenue
30th Floor
New York, New York 10017

Paul A. Engelmayer
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022

_____
L. Reid Skibell (rskibell@fklaw.com)

661249.1